Vanessa R. Waldref
United States Attorney
Eastern District of Washington
David M. Herzog
Alison L. Gregoire
Assistant United States Attorneys
Post Office Box 1494
Spokane, Washington 99210-1494
(509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 23, 2022

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:21-CR-00165-TOR-2 |
| Plaintiff, | Plea Agreement Entered Under Federal Rule of Criminal Procedure 11(c)(1)(C) |
| v. | |
| KYLIE RUBY FLORES, | |
| Defendant. | |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and David M. Herzog and/or Alison L. Gregoire, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Kylie Ruby Flores ("Defendant"), both individually and by and through Defendant's counsel, Robert Seines, agree to the following Plea Agreement.

1.   <u>Guilty Plea and Maximum Statutory Penalties</u>

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on November 16, 2021, which charges Defendant with Conspiracy to Commit Child Sex Trafficking, in violation of 18 U.S.C. § 1594(c), a Class A felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

1     a.     a term of imprisonment of not less than 15 years and up to a
2            lifetime;
3     b.     a term of supervised release of not less than 5 years and up to a
4            lifetime;
5     c.     a fine of up to $250,000;
6     d.     mandatory registration as a sex offender;
7     e.     a mandatory special assessment of $5,000 pursuant to the Justice
8            for Victims of Trafficking Act ("JVTA") of 2015, absent a judicial
9            finding of indigence;
10     f.     restitution; and
11     g.     a $100 special penalty assessment.

12     Defendant understands that a violation of a condition of supervised release

13 carries an additional penalty of reimprisonment for all or part of the term of

14 supervised release without credit for time previously served on post-release

15 supervision.

16     2.     <u>Supervised Release</u>

17     Defendant understands that if Defendant violates any condition of Defendant's

18 supervised release, the Court may revoke Defendant's term of supervised release, and

19 require Defendant to serve in prison all or part of the term of supervised release

20 authorized by statute for the offense that resulted in such term of supervised release

21 without credit for time previously served on postrelease supervision, up to the

22 following terms:

23     a.     5 years in prison if the offense that resulted in the term of
24            Supervised Release is a class A felony,
25     b.     3 years in prison if the offense that resulted in the term of
26            Supervised Release is a class B felony, and/or
27     c.     2 years in prison if the offense that resulted in the term of
28            Supervised Release is a class C felony.

PLEA AGREEMENT - 2

1    Accordingly, Defendant understands that if Defendant commits one or more
2  violations of supervised release, Defendant could serve a total term of incarceration
3  greater than the maximum sentence authorized by statute for Defendant's offense or
4  offenses of conviction.

5    3.    Rule 11 Nature of the Plea Agreement

6    Defendant acknowledges that this Plea Agreement is entered pursuant to
7  Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)").  Pursuant to
8  Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate
9  disposition of the case is 276 months (23 years) in custody, to be followed by a
10  lifetime of Supervised Release.  The United States and Defendant agree to make those
11  sentencing recommendations to the Court.  Although the United States and Defendant
12  agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C),
13  Defendant acknowledges that no promises of any type have been made to Defendant
14  with respect to the sentence the Court will ultimately impose.

15    Defendant understands that Defendant may withdraw from this Plea Agreement
16  if the Court imposes a term of imprisonment of greater than 276 months (23 years) or
17  indicates its intent to do so.  Defendant also understands that the United States may
18  withdraw from this Plea Agreement if the Court imposes a term of imprisonment of
19  less than 276 months (23 years) or a term of supervised release of less than
20  Defendant's lifetime, or indicates its intent to do so.

21    The United States and Defendant acknowledge that the imposition of any fine,
22  restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C)
23  nature of this Plea Agreement; that the United States and Defendant are free to make
24  any recommendations they deem appropriate as to the imposition of fines, restitution,
25  or conditions of Supervised Release; and that the Court will exercise its discretion in
26  this regard.  The Court's decisions regarding the imposition of fines, restitution, or
27  conditions of Supervised Release will not provide bases for Defendant to withdraw
28  Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

PLEA AGREEMENT - 3

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

4.    Sex Offender Registration

Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon release from prison as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d).

Defendant also understands that independent of Defendant's term of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's lifetime.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will keep Defendant's registration current with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours. Defendant agrees that during the duration of Defendant's registration requirement, Defendant will notify and verify with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours, of changes to Defendant's name, place of residence, place of employment, education, or religious worship, and any other information required by such agency or agencies. Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such requirements. Defendant understands that under 18 U.S.C. § 4042(c), notice will be provided to law enforcement agencies upon Defendant's release from confinement.

Defendant shall initially register with the state sex offender registration of the state of Defendant's release, and shall also register with the state sex offender agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.

Defendant shall provide proof of registration to the Probation Officer within 72 hours of Defendant's release from custody.

PLEA AGREEMENT - 4

5.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

      a.    pleading guilty in this case may have immigration consequences;

      b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

      c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

      d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.    the right to a jury trial;

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

PLEA AGREEMENT - 5

1    Defendant understands and agrees that any defense motions currently pending
2  before the Court are mooted by this Plea Agreement, and Defendant expressly waives
3  Defendant's right to bring any additional pretrial motions.

*Conspiracy to Commit*

4    7.    Elements of the Offense
5    The United States and Defendant agree that in order to convict Defendant of ^
6  Child Sex Trafficking, in violation of 18 U.S.C. § 1594(c), the United States would
7  have to prove the following, beyond a reasonable doubt:

*DMH*
*RMS*
*KF*

8        a.    *First*, beginning on or about February 2, 2021, and continuing
9              through on or about July 26, 2021, within the Eastern District of
10              Washington, Defendant knowingly conspired, confederated, and
11              agreed together with another person to recruit, entice, harbor,
12              transport, provide, obtain, advertise, maintain, patronize, or solicit
13              by any means Minor Victim 1, to engage in a commercial sex act;
14        b.    *Second*, Defendant knew that Minor Victim 1 was younger than 14
15              years old, acted in reckless disregard of Minor Victim 1's age, or
16              had a reasonable opportunity to view Minor Victim 1;
17        c.    *Third*, Defendant knew that Minor Victim 1 would be caused to
18              engage in a commercial sex act; and
19        d.    *Fourth,* Defendant's conduct was in or affecting interstate
20              commerce.
21    8.    Factual Basis and Statement of Facts
22    The United States and Defendant stipulate and agree to the following: the facts
23  set forth below are accurate; the United States could prove these facts beyond a
24  reasonable doubt at trial; and these facts constitute an adequate factual basis for
25  Defendant's guilty plea.  The United States and Defendant agree that this statement of
26  facts does not preclude either party from presenting and arguing, for sentencing
27  purposes, additional facts that are relevant to the Sentencing Guidelines computation
28  or sentencing, unless otherwise prohibited in this Plea Agreement.

PLEA AGREEMENT - 6

1    Defendant met codefendant Trever Daniel Harder ("Harder") on the Internet

2    dating application "Plenty of Fish" on or before February 2, 2021. At all times

3    relevant to the Indictment, Defendant and Harder both lived in the Spokane area, and

4    their communications took place in the Eastern District of Washington through the use

5    of the Internet, which is a means and facility of interstate and foreign commerce.

6    In messages between Defendant and Harder that began on February 2, 2021,

7    Defendant conspired with Harder to engage in the child sex trafficking of Defendant's

8    minor child, Minor Victim 1, whom Defendant knew to be 6 years old. In

9    communications that took place using the Internet, Defendant told Harder that she and

10   Minor Victim 1 needed a steady place to live, and Defendant and Harder discussed

11   Defendant making Minor Victim 1 available to Harder for Harder to abuse sexually, in

12   exchange for Harder providing Defendant and Minor Victim 1 with a place to live.

13   Defendant and Harder then affirmatively entered into an agreement that in

14   exchange for Defendant granting Harder sexual access to Minor Victim 1, Harder

15   would provide Defendant and Minor Victim 1 a place to stay at the Sleep Inn in

16   Airway Heights. At the time Defendant and Harder came to this agreement,

17   Defendant was the night manager at that hotel. The agreement between Defendant

18   and Harder contemplated "commercial sex acts" under federal law because the

19   agreement was for Harder to engage in sex acts with Minor Victim 1, on account of

20   which a thing of value – a stable place to stay – was received by Defendant.

21   Defendant completed the transaction for commercial sex acts when she

22   accepted a place to stay at the Sleep Inn in Airway Heights, in exchange for allowing

23   Harder to sexually abuse Minor Victim 1. Harder did in fact engage in illicit sexual

24   activity with Minor Victim 1, including vaginal and anal sexual intercourse. Minor

25   Victim 1, who was either 6 or 7 years old at all times relevant to the Indictment, was

26   interviewed by law enforcement and described the sexual acts that Harder performed

27   on her, including acts of anal sodomy that "hurt so bad." Minor Victim 1's account of

28   what Harder had done to her were completely corroborated. During the investigation,

PLEA AGREEMENT - 7

1  law enforcement officers recovered a video recording Harder created by setting up a

2  camera on a cat tree in his apartment in Cheney, Washington, opposite the couch in

3  the apartment. The video recording depicts Harder raping Minor Victim 1 on the

4  couch in his apartment, and Minor Victim 1 reacting in obvious pain.  In exchange for

5  that sex act and others that Harder perpetrated on Minor Victim 1, Defendant accepted

6  numerous things of value from Harder, including not only a place to stay, but also

7  money that Harder sent Defendant via Venmo (an Internet-based peer-to-peer

8  payment application), and the promise of Nike sneakers.

9         Defendant's specific communications with Harder regarding Defendant

10  receiving things of value in exchange for Harder perpetrating sex acts on Minor

11  Victim 1 took place on communications platforms that use the Internet, a means and

12  facility of Interstate and foreign commerce.

13         9.     The United States' Agreements

14               a.     Dismissal and Additional Charges

15         The United States Attorney's Office for the Eastern District of Washington

16  agrees that at the time of sentencing, the United States will move to dismiss Counts 2

17  and 3 of the Indictment filed on November 16, 2021, which charge Defendant with the

18  following offenses: Child Sex Trafficking, in violation of 18 U.S.C. § 1591(a)(1),

19  (b)(1) (Count 2) and Benefiting from Child Sex Trafficking, in violation of 18 U.S.C.

20  § 1594(a) (Count 3).

21         The United States Attorney's Office for the Eastern District of Washington

22  agrees not to bring additional charges against Defendant based on information in its

23  possession at the time of this Plea Agreement that arise from conduct that is either

24  charged in the Indictment or identified in discovery produced in this case, unless

25  Defendant breaches this Plea Agreement before sentencing.

26               b.     Contact Between Defendant and Minor Victim 1

27         The United States Attorney's Office understands that Defendant and Minor

28  Victim 1 are both member of the Quileute Tribe ("the Tribe"), and that the Tribe may

PLEA AGREEMENT - 8

1  take a different position than the United States Attorney's Office would with regard to

2  whether Defendant should have any future contact or communication with Minor

3  Victim 1.

4      The United States Attorney's Office also understands that while Defendant is in

5  custody, Defendant's ability to contact or communicate with Minor Victim 1 is likely

6  to be determined by the Tribe, Minor Victim 1's legal guardian, and/or the United

7  States Bureau of Prisons ("BOP").

8      The United States Attorney's Office for the Eastern District of Washington

9  agrees that at sentencing in this case, it will not affirmatively seek a no-contact order

10  between Defendant and Minor Victim 1 while Minor Victim 1 remains a minor.

11  Defendant understands that this agreement binds only the United States Attorney's

12  Office for the Eastern District of Washington, and does not limit in any way the

13  Court's ability to impose such an order or any condition of Supervised Release that

14  the Court believes is appropriate, BOP's ability to prevent contact and/or

15  communications between Defendant and Minor Victim 1 while Defendant is in

16  custody, the Tribe's ability to make any determination whatsoever regarding

17  Defendant's contact or communications with Minor Victim 1, and/or the guardian of

18  Minor Victim 1 to take any position at any time regarding Defendant's ability to

19  contact or communicate with Minor Victim 1.

20          c.    Potential Application of the First Step Act of 2018

21      Defendant anticipates seeking certain post-plea benefits pursuant to the First

22  Step Act of 2018. The United States Attorney's Office for the Eastern District of

23  Washington reserves the right to oppose any motions filed in the District Court

24  pursuant to any provision of the First Step Act or any laws that were amended

25  pursuant to the First Step Act. At the time of the entry of Defendant's guilty plea, the

26  United States Attorney's Office for the Eastern District of Washington takes no

27  position on whether Defendant should receive any benefits under the First Step Act

28  while she is incarcerated.

PLEA AGREEMENT - 9

10.   <u>United States Sentencing Guidelines Calculations</u>

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.  The United States and Defendant have no agreement as to the total offense level.

a.   <u>Base Offense Level</u>

The United States and Defendant agree that the base offense level for Conspiracy to Commit Child Sex Trafficking in violation of 18 U.S.C. § 1591(a)(1), (b)(1), is 34.  *See* U.S.S.G. § 2G1.3(a)(1).

b.   <u>Specific Offense Characteristics</u>

The United States and Defendant have no agreements regarding the application of specific offense characteristics.

c.   <u>Repeat and Dangerous Sex Offender</u>

The United States and Defendant agree that the offense level is increased by an additional five levels because Defendant engaged in a pattern of activity involving prohibited sexual conduct because she conspired to traffic Minor Victim 1 to Harder on two or more occasions.  *See* U.S.S.G. § 4B1.5(b).

d.   <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

   i.   accepts this Plea Agreement;

   ii.   enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

   iii.   demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

PLEA AGREEMENT - 10

       iv.      provides complete and accurate information during the sentencing process; and

       v.      does not commit any obstructive conduct.

Defendant and the United States agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

       e.      <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

       f.      <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11.    <u>Incarceration</u>

Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is 276 months (23 years) in custody, to be followed by a lifetime of Supervised Release. The United States and Defendant agree to make those sentencing recommendations to the Court.

12.    <u>Supervised Release</u>

The United States and Defendant each agree to recommend that the Court impose a lifetime term of supervised release.

PLEA AGREEMENT - 11

1       Defendant agrees that the Court's decision regarding the conditions of

2   Defendant's Supervised Release is final and non-appealable; that is, even if Defendant

3   is unhappy with the conditions of Supervised Release ordered by the Court, that will

4   not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this

5   Plea Agreement, or appeal Defendant's conviction, sentence, or any term of

6   Supervised Release.

7       The United States and Defendant agree to recommend that in addition to the

8   standard conditions of supervised release imposed in all cases in this District, the

9   Court should also impose the following conditions:

10      a.    The United States Probation Officer may conduct, upon reasonable

11             suspicion, and with or without notice, a search of Defendant's

12             person, residences, offices, vehicles, belongings, and areas under

13             Defendant's exclusive or joint control.

14      b.    Defendant shall participate and complete such drug testing and

15             drug treatment programs as the Probation Officer directs.

16      c.    Defendant shall complete mental health evaluations and treatment,

17             including taking medications prescribed by the treatment provider.

18             Defendant shall allow reciprocal release of information between

19             the Probation Officer and the treatment provider.  Defendant shall

20             contribute to the cost of treatment according to the Defendant's

21             ability.

22      d.    Defendant shall report to the Probation Office any and all

23             electronic communications service accounts, as defined in 18

24             U.S.C. § 2510(15) used for user communications, dissemination

25             and/or storage of digital media files (i.e. audio, video, images).

26             This includes, but is not limited to, email accounts, social media

27             accounts, and cloud storage accounts.  Defendant shall provide

28             each account identifier and password, and shall report the creation

PLEA AGREEMENT - 12

of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation. The Probation Office is permitted to access and search any accounts using Defendant's credentials pursuant to this condition only when reasonable suspicion exists that Defendant has violated a condition of Defendant's supervision and that the accounts to be searched contain evidence of this violation.

13. Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets, including, but not limited to the following:

- an Apple iPhone 8

Defendant stipulates that Defendant is the sole owner of the assets listed above and that no one else has an interest in these assets.

Defendant acknowledges that any assets listed above, which Defendant is agreeing to forfeit, are subject to forfeiture pursuant to 18 U.S.C. § 1594, as property used or intended to be used in any manner or part to commit or to facilitate the offense to which Defendant is pleading guilty.

PLEA AGREEMENT - 13

1    Defendant agrees to take all steps requested by the United States to pass clear
2 title to these assets to the United States, and to testify truthfully in any forfeiture
3 proceeding.
4    Defendant agrees to hold harmless all law enforcement agents/officers, and the
5 United States, its agents, and its employees from any claims whatsoever arising in
6 connection with the seizure and/or forfeiture of the assets listed above.
7    Defendant waives further notice of any federal, state or local proceedings
8 involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this
9 Plea Agreement.
10    Defendant waives all constitutional, equitable and statutory challenges in any
11 manner (including direct appeal, habeas corpus, or any other means) to any forfeiture
12 carried out in accordance with this Plea Agreement on any grounds, including that the
13 forfeiture constitutes an excessive fine or punishment.
14    Defendant knowingly and voluntarily waives Defendant's right to a jury trial on
15 the forfeiture of this asset.
16    Defendant waives oral pronouncement of forfeiture at the time of sentencing,
17 and any defects that may pertain to forfeiture.
18    15.   Abandonment
19    Defendant agrees to abandon to the Federal Bureau of Investigation ("FBI"),
20 the following listed asset:
21    -   a black android cellular phone
22    Defendant agrees to take all steps as requested by the United States and FBI to
23 effectuate the abandonment of the asset to FBI and hereby agrees to execute any and
24 all forms and pleadings necessary to effectuate such abandonment.  Defendant
25 consents to the disposal, including destruction, of the asset.  Defendant waives any
26 right Defendant might otherwise have had to receive notice or a hearing with respect
27 to any motion, pleading, order, or any other action that FBI might take, in its sole
28 discretion, to carry out the abandonment, disposition, and destruction of the asset.

PLEA AGREEMENT - 14

1   Defendant's waiver includes, without limitation, all common law, statutory, and
2   constitutional claims or challenges, on any grounds, arising at any time from, or
3   relating to, the seizure, abandonment, disposition, and destruction of the asset,
4   including any such claim for attorney fees and litigation costs.

5   16.   Mandatory Special Penalty Assessment

6   Defendant agrees to pay the $100 mandatory special penalty assessment to the
7   Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

8   17.   Restitution

9   The United States and Defendant agree that restitution is appropriate and
10  mandatory, without regard to Defendant's economic situation, to identifiable victims
11  who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A,
12  3664.  Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay
13  restitution for all losses caused by Defendant's individual conduct, in exchange for the
14  United States not bringing additional potential charges, regardless of whether counts
15  associated with such losses will be dismissed as part of this Plea Agreement.

16  With respect to restitution, the United States and Defendant agree to the
17  following:

18  a.   Restitution Amount and Interest

19  The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C.
20  §§ 3663, 3663A, and 3664, the Court should order restitution in an amount of $30,000
21  to Minor Victim 1, and that any interest on this restitution amount, if any, should be
22  waived.  Prior to the sentencing hearing, the United States anticipates obtaining from
23  the Quileute Tribe the specific party to whom the restitution should be made payable
24  on behalf of Minor Victim 1, who is not yet 8 years old.

25  b.   Payments

26  To the extent restitution is ordered, the United States and Defendant agree that
27  the Court will set a restitution payment schedule based on Defendant's financial
28  circumstances.  18 U.S.C. § 3664(f)(2), (3)(A).

PLEA AGREEMENT - 15

Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards Defendant's restitution obligations.

c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

d.    Notifications and Waivers

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution. 18 U.S.C. § 3664(k). Defendant agrees to notify the United States of any address change within 30 days of that change. 18 U.S.C. § 3612(b)(1)(F). These obligations cease when Defendant's restitution is paid in full.

PLEA AGREEMENT - 16

1    Defendant acknowledges that the Court's decision regarding restitution is final
2    and non-appealable; that is, even if Defendant is unhappy with the amount of
3    restitution ordered by the Court, that will not be a basis for Defendant to withdraw
4    Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's
5    conviction, sentence, or restitution order.

6    18.   <u>Payments While Incarcerated</u>

7    If Defendant lacks the financial resources to pay the monetary obligations
8    imposed by the Court, Defendant agrees to earn money to pay toward these
9    obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility
10   Program.

11   19.   <u>Additional Violations of Law Can Void Plea Agreement</u>

12   The United States and Defendant agree that the United States may, at its option
13   and upon written notice to the Defendant, withdraw from this Plea Agreement or
14   modify its sentencing recommendation if, prior to the imposition of sentence,
15   Defendant is charged with or convicted of any criminal offense or tests positive for
16   any controlled substance.

17   20.   <u>Waiver of Appeal Rights</u>

18   In return for the concessions that the United States has made in this Plea
19   Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's
20   conviction and sentence if the Court imposes a term of imprisonment consistent with
21   the terms of this Rule 11(c)(1)(C) Plea Agreement.

22   If the Court indicates its intent to impose a sentence above the Rule 11(c)(1)(C)
23   terms of this Agreement and Defendant chooses *not* to withdraw, then:

24   a.   Defendant may appeal only Defendant's sentence, but not
25        Defendant's conviction;
26   b.   Defendant may appeal Defendant's sentence only if it exceeds the
27        high end of the Guidelines range determined by the Court; and
28

PLEA AGREEMENT - 17

1            c.      Defendant may appeal only the substantive reasonableness of

2                   Defendant's sentence.

3        Defendant expressly waives Defendant's right to appeal any restitution order

4 imposed by the Court, so long as the Court orders restitution of $30,000 or less.

5        Defendant expressly waives Defendant's right to appeal any fine imposed by

6 the Court.

7        Defendant expressly waives Defendant's right to file any post-conviction

8 motion attacking Defendant's conviction and sentence, including a motion pursuant to

9 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from

10 information not now known by Defendant and which, in the exercise of due diligence,

11 Defendant could not know by the time the Court imposes sentence.

12        Nothing in this Plea Agreement shall preclude the United States from opposing

13 any post-conviction motion for a reduction of sentence or other attack upon the

14 conviction or sentence, including, but not limited to, writ of habeas corpus

15 proceedings brought pursuant to 28 U.S.C. § 2255.

16        21.    <u>Compassionate Release</u>

17        In consideration for the benefits Defendant is receiving under the terms of this

18 Plea Agreement, Defendant expressly waives Defendant's right to bring any motion

19 for Compassionate Release other than a motion arising from one of the specific bases

20 set forth in this paragraph of this Plea Agreement.  The United States retains the right

21 to oppose, on any basis, any motion Defendant files for Compassionate Release.

22        The only bases on which Defendant may file a motion for Compassionate

23 Release in the Eastern District of Washington are the following:

24            b.     Medical Condition of Defendant.

25                  i.      Defendant is suffering from a terminal illness (i.e., a serious

26                          and advanced illness with an end of life trajectory).  A

27                          specific prognosis of life expectancy (i.e., a probability of

28                          death within a specific time period) is not required.

PLEA AGREEMENT - 18

1        Examples include metastatic solid-tumor cancer,

2        amyotrophic lateral sclerosis (ALS), end-stage organ

3        disease, and advanced dementia; or

4    ii.    Defendant is suffering from a serious physical or medical

5        condition, a serious functional or cognitive impairment, or

6        deteriorating physical or mental health because of the aging

7        process that substantially diminishes the ability of the

8        defendant to provide self-care within the environment of a

9        correctional facility and from which Defendant is not

10       expected to recover.

11   c.    Age of Defendant.

12   i.    Defendant is at least 65 years old, is experiencing a serious

13       deterioration in physical or mental health because of the

14       aging process; and has served at least 10 years or 75 percent

15       of Defendant's term of imprisonment, whichever is less; or

16   ii.    Defendant is at least 70 years old and has served at least 30

17       years in prison pursuant to a sentence imposed under 18

18       U.S.C. § 3559(c) for the offense or offenses for which

19       Defendant is imprisoned.

20   d.    Family Circumstances.

21   i.    The caregiver of Defendant's minor child or children has

22       died or become incapacitated, and Defendant is the only

23       available caregiver for Defendant's minor child or children;

24       or

25   ii.    Defendant's spouse or registered partner has become

26       incapacitated, and Defendant is the only available caregiver

27       for Defendant's spouse or registered partner.

28

PLEA AGREEMENT - 19

e.    Subsequent Reduction to Mandatory Sentence.

    i.    Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

    ii.    after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

    iii.    the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

f.    Ineffective Assistance of Counsel.

    i.    Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

        1.    did not know at the time of Defendant's guilty plea, and

        2.    could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

22.    <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    this Plea Agreement shall become null and void;

b.    the United States may prosecute Defendant on all available charges;

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging

PLEA AGREEMENT - 20

instrument, or were not charged because of this Plea Agreement; and

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

23.    <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

///
///
///
///
///

PLEA AGREEMENT - 21

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____          6/16/2022
David M. Herzog                             Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney.  I understand the terms of this Plea Agreement.  I enter into this Plea Agreement knowingly, intelligently, and voluntarily.  I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement.  No one has threatened or forced me in any way to enter into this Plea Agreement.  I agree to plead guilty because I am guilty.

_____          6-14-22
Kylie Ruby Flores                           Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          6-14-22
Robert Seines                               Date
Attorney for Defendant

PLEA AGREEMENT - 22